United States v. Ortega-Arreta

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand eighteen.

Present:
> PETER W. HALL,
> GERARD E. LYNCH,
> *Circuit Judges*,
> VICTOR A. BOLDEN,
> *District Judge.*\*

---

United States of America,

> *Appellant*,

v.                                                                 17-3429-cr

Felipe Ortega-Arrieta,

> *Defendant-Appellee*.

---

*For Appellee*:                    STEVEN D. CLYMER, Assistant United States
                                   Attorney, *for* Grant C. Jaquith, United States

---

\* Victor A. Bolden, United Stated District Judge for the District of Connecticut, sitting by designation.

Attorney for the Northern District of New York, Syracuse, NY.

*For Defendant-Appellant*:    JAMES EGAN, Assistant Federal Public Defender, Syracuse, NY.

Appeal from a judgment entered October 23, 2017, in the Northern District of New York (Hurd, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment is **VACATED** and the case is **REMANDED** for further proceedings.

The government appeals from the judgment of the district court dismissing the one-count indictment charging defendant-appellee Ortega-Arrieta with unlawful reentry on the ground that it was filed more than five years after the limitations period had begun to run. We assume the parties' familiarity with the underlying facts, the procedural history, and the arguments presented on appeal, which we describe only as necessary to explain our decision to vacate and remand.

We review *de novo* a district court's interpretation of statutes. *See United States v. Williams*, 733 F.3d 448, 452 (2d Cir. 2013) ("Interpretations of statutes are pure questions of law, and we therefore review *de novo* Williams's claim that he was 'found in' the United States in 2002 within the meaning of sections 1326(a) and (b)(2).").

The district erred in ruling that the indictment was untimely. Our 2013 decision in *United States v. Williams*, 733 F.3d 448 squarely governs this case. In *Williams*, we noted two elements are required for an alien to be "found in" the United

2

States in violation of 8 U.S.C. § 1326(a).  First, authorities must "discover the illegal alien in the United States." *Id.* at 453 (internal quotation marks omitted).  Second, law enforcement must "know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence." *Id.*  We noted that the second requirement—that the illegality was known or should have been known to federal authorities—was satisfied because federal officials knew Williams was in the United States illegally because of his deportation in 1996. *Id.* The central issue here, as it was in *Williams*, is when authorities "discovered" Ortega-Arrieta.

In *Williams* we rejected the defendant's argument that a person would be "discovered," for the purposes of 8 U.S.C. § 1326(a), "when federal authorities possess a lead that would have, if pursued, resulted in the apprehension of the person," concluding that this "approach would require law enforcement authorities to follow up on every piece of material information entered into a large system supervised by a limited staff, however impracticable this may be in light of the proverbial haystack before them."  Id. at 454.  We concluded "that a person who has illegally reentered is 'found in' the United States when his or her 'presence is discovered,' which we understand to mean that *the federal authorities possess reliable information as to the alien's whereabouts." Id.* at 455 (emphasis added) (quoting *United States v. Whittaker*, 999 F.2d 38, 41–42 (2d Cir. 1993)).

The district court found that, under our reasoning in *Williams*, because "federal officials were notified of [Ortega-Arrieta]'s arrest warrant pursuant to his

3

FBI identification number via the NCIC system . . . federal officials obtained specific information concerning [his] whereabouts in December 2011." In other words, the court concluded that because federal immigration officials were aware that the arrest warrant existed, and because the arrest warrant contained reliable information about Ortega-Arrieta's whereabouts, he was "found" in December 2011, and thus that the limitations period began to run at that time.

In *Williams*, we rejected the defendant's contention that an alien is "found" when federal authorities "possess a lead that would have, if pursued, resulted in the apprehension of the person." *Id.* at 454. We need not decide in this case whether federal authorities can be deemed to have possessed information simply because that information has been placed in the NCIC database and automatically uploaded to a database maintained by a federal agency. We may assume for the sake of argument that the agency possessed that information. Even on that assumption, however, what the federal authorities had—an entry in an NCIC system that, if pursued, would have unearthed the actual arrest warrant bearing Ortega-Arrieta's address—was not sufficient for them to have "found" him. Our rule, under *Williams* is that federal authorities have "found" an alien when they "possess reliable information as to the alien's whereabouts." *Id.* at 455. Here, federal authorities did not "possess" the warrant, and Ortega-Arrieta's address was not within the information that we assume arguendo the authorities *did* possess—specifically, information contained in the NCIC entry. As a result, the district court erred when it dismissed the indictment on limitations grounds.

Consequently, we conclude that the district court erred by ruling that the indictment was untimely. We therefore vacate the district court's judgment dismissing the indictment.

We **VACATE** the judgment of the district court and **REMAND** for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
